## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

TRACEY ELLIS, JAMAR MATTOX, and ERIC KING,

     Plaintiffs,

     v.

OAK LAWN HYUNDAI, INC., d/b/a HAPPY HYUNDAI and DELILA DEDIC,

     Defendants.

Case No. 24 CV 4642

Judge Georgia N. Alexakis

## MEMORANDUM OPINION AND ORDER

Plaintiffs Tracey Ellis, Jamar Mattox, and Eric King worked for defendant Oak Lawn Hyundai, Inc., which does business as Happy Hyundai. In this suit, they claim that Happy Hyundai violated Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1981 ("§ 1981"), and the Illinois Human Rights Act ("IHRA") by discriminating against them based on their race and disability status. Mattox and King also bring claims for intentional infliction of emotional distress ("IIED") under Illinois law against Happy Hyundai and Delila Dedic, one of their supervisors.

Defendants have moved to dismiss all claims brought by plaintiffs Mattox and King for failure to state a claim. For the reasons set forth below, the Court denies defendants' motions to dismiss in full.

1

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need only contain factual allegations that, accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

At the pleading stage, the Court must "accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff," as it does in the background section that follows. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). But "allegations in the form of legal conclusions are insufficient." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## BACKGROUND

Because defendants have not moved to dismiss the claims brought by Ellis, the Court focuses on the facts as they relate to plaintiffs King and Mattox.

King is an African American man who began working as a sales consultant for Happy Hyundai in May 2023 until he resigned in May 2024. [27] ¶¶ 30, 134, 183. King alleges that he observed and was the victim of various racially motivated

2

comments in the year he worked at Happy Hyundai. First, "on several occasions, [he] heard racially motivated commentary" from Dedic, one of his two direct supervisors. *Id.* ¶¶ 36, 135. For example, Dedic stated that minorities "smelled" and asked black customers "where they got the money to pay for" Happy Hyundai's cars. *Id.* ¶¶ 143–44. According to King, Dedic also ran "excessive background checks on minority employees and customers" and "would often question the legitimacy of [ ] immigrant customers," sometimes questioning whether they had "real jobs" based on their immigration status. *Id.* ¶¶ 136–38. Dedic also made "racially motivated and derogatory comments toward employees and customers of Palestinian culture," including making "derogatory jokes" about Ahmed, plaintiffs' other direct supervisor.[1] *Id.* ¶¶ 36, 139–41.

In addition to Dedic, King also heard Ahmed make racially motivated comments about other minority employees, including fellow plaintiff Mattox. For example, King alleges that "Ahmed would often disparage and degrade [Mattox] with negative comments about his intelligence," calling him "one of the slow ones"—a grouping that King interpreted to refer to black employees. *Id.* ¶¶ 148–50. On several occasions, King also heard Ahmed refer to Courtney Davis, another black employee, as "choco." *Id.* ¶ 152. Ahmed would also "discuss fried chicken and watermelon in reference to black employees," and Dedic would laugh in response. *Id.* ¶¶ 153–55. When a Hispanic employee was leaving her shift, King heard Ahmed say: "I thought Mexicans liked to work." *Id.* ¶¶ 156–58.

---

[1] Plaintiffs' complaint does not specify Ahmed's last name, [27] ¶ 146, so for present purposes, the Court refers to him only as "Ahmed."

3

During a Saturday meeting on May 4, 2024, King alleges that Dedic referred to King and Davis as animals in front of "dozens" of their coworkers "in an attempt to humiliate, embarrass, and degrade black employees." *Id.* ¶¶ 163–66. During the same meeting, Dedic told King and Davis to "stop hanging around like monkeys." *Id.* ¶¶ 169–70. King alleges that on another occasion, he similarly heard Ahmed tell a black coworker to "stop running around like a monkey." *Id.* ¶¶ 174–75. King complained to Happy Hyundai's manager about the May 4 comments on May 6, 2024, and resigned four days later. *Id.* ¶¶ 178, 183.

Mattox is an African American man who began working as a sales consultant for Happy Hyundai in October 2023. *Id.* ¶ 184. In 2019, Mattox was diagnosed with multiple sclerosis ("MS"). *Id.* ¶ 186. Mattox alleges that Dedic often publicly humiliated him with racially coded language, calling him "stupid" and "slow" and "claiming he had low intelligence" in front of the Happy Hyundai staff and customers. *Id.* ¶¶ 191, 194, 200. He further alleges that Dedic would "often threaten to fire [him] publicly," referred to black employees collectively as "ya'll" and "you people," and on one occasion told him he looked like a "thug" while dressed in work attire. *Id.* ¶¶ 212, 216. On another occasion, Mattox says Dedic asked him whether his sister was smoking weed, a question he says revealed "her severe racial animus" by associating "black people … with drugs." *Id.* ¶¶ 242–44.

Mattox also alleges several instances of discrimination related to his MS. On one occasion, Mattox says that during a Saturday morning meeting, Dedic asked whether he is blind in response to Mattox having difficulty seeing, even though Dedic

knew he has trouble seeing as a result of his MS. *Id.* ¶¶ 195–96. Mattox responded by asking Dedic whether she was "really making a joke about this." *Id.* ¶ 198. Mattox also alleges that he was written up for being late to work after a doctor's appointment, even though he told Dedic about the appointment in advance. *Id.* ¶¶ 226–28. In addition, he says that Dedic "in a rage … announced [his] diagnosis of MS to all staff … in an attempt to further humiliate and embarrass him," even though Mattox hadn't told any staff about his diagnosis. *Id.* ¶¶ 231–32.

Mattox recounts another instance in which Dedic asked him to "stop rolling his eyes at her," even though Dedic was aware that Mattox could not control the movements in his right eye because of his disability. *Id.* ¶¶ 248–49. When Mattox told Dedic he was not rolling his eyes at her, Dedic told Mattox that she "did not like his attitude" and fired him. *Id.* ¶¶ 251–53. When Mattox asked Dedic why he was being terminated, Dedic said she "did not need a reason." *Id.* ¶ 254. Mattox says that after he was fired, Happy Hyundai's management called the police to escort him out as he was saying goodbye to his coworkers. *Id.* ¶¶ 256–58.

In addition to these various incidents, plaintiffs generally allege that Happy Hyundai embarked on a "racist scheme to keep black employees away from [Happy Hyundai] customers" and that Happy Hyundai stationed its black employees "in the service center where they could not be seen by customers." *Id.* ¶¶ 58–62.

Mattox and King cross-filed charges of unlawful discrimination with the Illinois Department of Human Rights ("IDHR") and Equal Opportunity Employment Commission ("EEOC") on May 2, 2024, and June 4, 2024, respectively. *Id.* ¶¶ 10–11;

*see also* [27-2] at 1; [27-3] at 1. The EEOC dismissed the charges and issued Mattox a notice of right to sue on May 14, 2024. *See* [27-5] Ex. B; *see also* [27] ¶ 14. The IDHR likewise issued King a notice of right to sue on July 3, 2024. *See* [27-4] at 6; *see also* [27] ¶ 16.

In June 2024, King, Mattox, and a third plaintiff, Ellis, filed suit against Happy Hyundai and Dedic, alleging that defendants violated various state and federal laws with their conduct toward plaintiffs.[2] Plaintiffs amended their complaint in July 2024, *see* [8], and again in December 2024, *see* [27]. The second amended complaint brings claims for: (1) race discrimination under Title VII, § 1981, and the IHRA (Count I); (2) hostile work environment[3] based on race under Title VII, § 1981, and the IHRA (Count II); (3) race-based retaliation under Title VII, § 1981, and the IHRA (Count III), (4) IIED under Illinois common law (Count IV); (5) disability discrimination under the ADA and § 1981 (Count VI); (6) hostile work environment based on disability under the ADA and § 1981 (Count VII); and disability-based retaliation under the ADA and § 1981 (Count VIII).[4] *See generally id.* All counts are directed toward defendant Happy Hyundai; only Count IV is directed toward Dedic. *Id.* Counts I and II are brought by all plaintiffs; Count III is brought by Ellis and

---

[2] Mattox had previously filed a separate suit in the Northern District of Illinois based on the same allegations of race and disability discrimination. *See Mattox v. Oaklawn Hyundai, Inc.*, No. 24-cv-04416, [1] (N.D. Ill.). In August 2024, the district judge assigned to that matter granted Mattox's motion for voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A). *Id.* [14]; [15]; [16].

[3] Although Counts II and VII are styled as race and disability "harassment" claims, the Court analyzes these claims under the framework for a Title VII hostile work environment claim, consistent with the parties' briefing. [27] ¶¶ 279–94, 326–39.

[4] There is no Count V in the second amended complaint; the allegations skip from Count IV to Count VI. *See* [27] ¶¶ 314–15.

6

Mattox; Count IV is brought by King and Mattox, and Counts VI, VII, and VIII are brought only by Mattox. *Id.*

In February 2025, defendants moved to dismiss all claims brought by King and Mattox. *See* [31]; [32]. Defendants have not moved to dismiss the claims brought by Ellis. In March 2025, the Court granted defendants' motion to stay their answer to the claims brought by Ellis until the Court decides the present motion to dismiss. [33]; [38].

## DISCUSSION

The Court begins by addressing defendants' motion to dismiss King's claims [32], and then moves on to defendants' motion to dismiss Mattox's claims [31].

### A. King

#### 1. Count I – Discrimination

In Count I, King alleges that Happy Hyundai violated Title VII, § 1981, and the IHRA when it discriminated against him on account of his race. [27] ¶ 269. "Claims under Title VII and § 1981 are analyzed in the same manner, and therefore case law addressing one type of claim applies to both types." *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 814 (7th Cir. 2022) (citing *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011)). The same goes for claims brought under the IHRA. *See Thomas v. Comcast of Chicago, Inc.*, No. 11-CV-1209, 2012 WL 3205008, at *5 n.1 (N.D. Ill. Aug. 2, 2012). The Court therefore conducts a single analysis applicable to all three statutes.

To survive a motion to dismiss, a plaintiff alleging race discrimination under Title VII "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her [race]." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). "This 'minimal pleading standard' requires a complaint to give the defendant 'sufficient notice to enable the defendant to begin to investigate and prepare a defense.'" *Boyd v. Advanced Physicians*, No. 22-CV-7012, 2024 WL 1363421, at *3 (N.D. Ill. Mar. 29, 2024) (quoting *Tamayo*, 526 F.3d at 1084).

Happy Hyundai argues King's race discrimination claim fails because he has not pled an adverse employment action. [46] at 1. To make out a Title VII discrimination claim, "a transferee must show some harm respecting an identifiable term or condition of employment," but that harm does not need to be "significant." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55, 359 (2024). Terms or conditions of employment include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a [ ] change in benefits." *Bell v. E.P.A.*, 232 F.3d 546, 555 (7th Cir. 2000) (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)). "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996).

King first contends he experienced an adverse employment action when "he and other Black employees were segregated and deliberately kept out of customer-facing roles, relegated instead to the back of the dealership where they were hidden from view." [41] at 8. But the allegations in the complaint are not specific enough to suggest that this somehow changed the terms or conditions of King's employment. The complaint alleges that Ellis overheard Dedic and another supervisor discussing that Ellis—not King—should be kept downstairs, which plaintiffs allege was part of Happy Hyundai's "racist scheme to keep black employees away from Defendant customers." [27] ¶¶ 56–58. King further alleges that black employees "were often in the service center where they could not be seen by customers." *Id.* ¶ 62. But beyond these general allegations, King alleges nothing to suggest that *he specifically* was denied a customer-facing role on account of his race. For example, King does not allege that he asked to have a customer-facing role and was denied such an opportunity. Nor does he allege that he once had a customer-facing role and this role was taken away from him. Without more allegations specific to King, the Court cannot infer that he experienced an adverse employment action based on Happy Hyundai's general scheme to hide black employees from customers' view.

King also argues that he was constructively discharged because the hostile environment at Happy Hyundai left him "no choice but to resign." [41] at 11; *see also id.* at 8; [27] ¶¶ 180–81. To proceed under a constructive discharge theory, a plaintiff must prove: (1) "that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign," and (2) "he

actually resigned." *Green v. Brennan*, 578 U.S. 547, 555 (2016). "[A] plaintiff's working conditions must be even more egregious than the high standard for hostile work environment claims, because, in the ordinary case, an employee is expected to remain employed while seeking redress." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789 (7th Cir. 2007). Happy Hyundai argues that the "conduct King attributes to Happy Hyundai was not so intolerable that a reasonable person would have been compelled to resign." [32-1] at 4.

*Carlson v. CSX Transportation, Inc.* is instructive on the standard for pleading a constructive discharge. 758 F.3d 819, 830 (7th Cir. 2014). There, plaintiff alleged that she was subject to "regular belittlement, unfair criticism, and unduly poor assessments" on account of her sex, even though "[n]o one had said anything overtly sexist." *Id.* at 829. The district court concluded that these allegations were too "conclusory" to state a constructive discharge claim, but the Seventh Circuit reversed. *Id.* at 829–30. Relying on the low pleading standard for Title VII discrimination claims set forth in *Swierkiewicz*, *Carlson* held that the conditions alleged in the complaint sufficed at the pleading stage, even though they "may not ultimately qualify as intolerable." *Id.* at 830; *see also Boyd*, 2024 WL 1363421, at *6 (finding, based on *Carlson*, that plaintiff stated a constructive discharge claim where she alleged "specific examples of poor treatment based … on her race") (internal quotations omitted).

King meets this standard here. He alleges that, "as a result of the embarrassment and humiliation" he experienced, "he was left with no choice but to

resign." [27] ¶¶ 180–81. King also alleges "specific examples of poor treatment" from his supervisors based on his race that preceded his resignation. *Carlson*, 758 F.3d at 830. For example, he recounts that Dedic stated that minorities "smelled," made disparaging comments about black customers, and used racial slurs to refer to King and another black employee in front of dozens of other employees, including referring to them as "monkeys." [27] ¶¶ 143–44, 165–73. He also alleges that Ahmed called a black employee "choco," compared a black employee to a "monkey," and would make fried chicken and watermelon comments to black employees. *Id.* ¶¶ 152–55, 175. As discussed, he also alleges that Happy Hyundai went out of its way to keep black employees from customer-facing roles. *Id.* ¶¶ 56–58, 62. As in *Carlson* and *Boyd*, "the Court cannot say at this early stage that [King's] claim necessarily fails." *Boyd*, 2024 WL 1363421, at *6. At this point, it is enough that King's allegations give Happy Hyundai "sufficient notice to begin to investigate and defend against [his] claim." *Tamayo*, 526 F.3d at 1085.

Happy Hyundai argues that, "to the extent that King seeks relief under the [IHRA], his claim fails because the Illinois Courts do not recognize retaliation claims based on constructive discharge." [32-1] at 4. But King does not bring a retaliation claim under the IHRA, and Happy Hyundai does not offer any case suggesting that the same principle applies to claims of discrimination. The Court therefore denies Happy Hyundai's motion to dismiss King's race discrimination claim in Count I.

### 2. Count II – Hostile Work Environment

In Count II, King brings a claim for hostile work environment under Title VII, § 1981, and the IHRA. [27] ¶ 285. To succeed on a hostile work environment claim, "a plaintiff must demonstrate that: (1) he was subject to unwelcome harassment; (2) the harassment was based on race (or another protected category); (3) the harassment was severe or pervasive to a degree that altered the conditions of employment and created a hostile or abusive work environment; and (4) there is a basis for employer liability." *Robinson v. Perales*, 894 F.3d 818, 828 (7th Cir. 2018) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66–72 (1986)). In seeking to dismiss King's hostile work environment claim, Happy Hyundai focuses on the first three elements; it mounts no argument regarding the fourth. *See* [32-1] at 4–5; [46] at 3–4.

Whether an environment is "hostile" or "abusive" is "determined only by looking at all the circumstances" including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Here, King plausibly states that his work environment had become "hostile" or "abusive" for the same reasons described above in the constructive discharge context. Other courts have found an actionable hostile work environment claim where a plaintiff alleges a supervisor referred to them as a "monkey." *See Holmes v. Austin*, No. CV 23-2415 (LLA), 2024 WL 4345829, at *7 (D.D.C. Sept. 30, 2024); *see also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012) ("Given the history of racial stereotypes

12

against African-Americans and the prevalent one of African-Americans as animals or monkeys, it is a reasonable—perhaps even an obvious—conclusion that the use of monkey imagery is intended as a racial insult where no benign explanation for the imagery appears.") (cleaned up) (quoting *United States v. Jones*, 159 F.3d 969, 977 (6th Cir. 1998)). The case for a hostile work environment is also particularly strong here where a supervisor uses a racial epithet in front of subordinates. *See Rodgers v. W.-S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993) ("Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet … by a supervisor in the presence of his subordinates.") (internal citation omitted); *see also Robinson*, 894 F.3d at 828–29.

Happy Hyundai counters that several of the incidents described in the complaint "weren't even directed to [King]." [32-1] at 5. But while harassing comments directed at others may "carry less weight than remarks directed at the plaintiff," they "may still be relevant to a hostile work environment claim." *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 601–02 (7th Cir. 2021) (cleaned up); *see also Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 272 (7th Cir. 2004) ("Repeated use of [racial epithets] in the work environment … may create an objectively hostile work environment, even if they are heard secondhand."). Happy Hyundai does not explain why the comments toward others do not suffice under binding case law. Nor does it explain why the comments made toward King are not sufficient to state a hostile work environment claim on their own. *C.f. Padron v. Wal-Mart Stores, Inc.*, No. 12-CV-

13

08089, 2017 WL 1208379, at *5 (N.D. Ill. Mar. 31, 2017) ("A single act of harassment may create a hostile work environment if it is sufficiently egregious."). The Court finds the various allegations described above are enough—at least at this stage in the litigation—to plausibly allege that King was subject to a hostile work environment on account of his race. *See Robinson*, 894 F.3d at 828 ("Whether harassment was so severe or pervasive as to constitute a hostile work environment is generally a question of fact for the jury.") (quoting *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 901 (7th Cir. 2018)).

The Court therefore denies Happy Hyundai's motion to dismiss King's hostile work environment claim in Count II.

### 3. Count IV – Intentional Infliction of Emotional Distress

In Count IV, King brings a claim for intentional infliction of emotional distress under Illinois law against Happy Hyundai and Dedic. [27] ¶ 309. To state a claim for IIED in Illinois, King must allege that (1) the conduct involved was "truly extreme and outrageous," (2) the actor "intend[ed] that [their] conduct inflict severe emotional distress, or know that there [was] at least a high probability that [their] conduct will cause severe emotional distress, and (3) the conduct did "in fact cause severe emotional distress." *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988). "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity." *Id.* (quoting Restatement (Second) of Torts § 46, comment j, at 77–78 (1965)).

14

Defendants wait to argue for the first time in their reply brief that King's IIED claim is preempted by the IHRA. [46] at 5–6. Section 8-111(D) provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(D). The IHRA provides that it is a "civil rights violation" for "any employer to refuse to hire, to segregate, … or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination," 775 ILCS 5/2-102(A), including race discrimination, *id.* § 1–103(Q).

Defendants argue this provision bars King's IIED claim because the claim is "premised on and rooted in" the same facts as his civil rights claims. [46] at 6. But in *Richards v. U.S. Steel*, the Seventh Circuit clarified that preemption rests not on the factual overlap between claims "but rather whether the plaintiff can prove the elements of the tort 'independent of any legal duties created by the [IHRA].'" 869 F.3d 557, 564 (7th Cir. 2017) (quoting *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 514 (1997)). In other words, "the concrete question to ask is whether the plaintiff states a valid common-law claim without needing to rely on the rights and duties created by the [IHRA]." *Id.* Defendants do not offer any reason why King's IIED claim relies on a legal right or duty created by the IHRA, instead incorrectly emphasizing the factual overlap between the claims, and the Court will not make their arguments for them. *See Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995).

15

Defendants also argue that their alleged conduct was not sufficiently "extreme and outrageous" to state a claim for IIED. *McGrath*, 126 Ill. 2d at 86. To be considered extreme and outrageous, "the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Richards*, 869 F.3d at 566 (quoting *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 270 (2003)). In the employment context, "Illinois courts have limited recovery to cases in which the employer's conduct has been truly egregious." *Id.* at 567 (quoting *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 568 (7th Cir. 1997)). "Indeed, there is general hesitation 'to find intentional infliction of emotional distress in the workplace because, if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action.'" *Id.* (quoting *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006)).

Although everyday job stresses do not suffice, Illinois courts have allowed workplace IIED claims to succeed where the employer "clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Naeem*, 444 F.3d at 605; *see also Honaker v. Smith*, 256 F.3d 477, 491 (7th Cir. 2001) ("[T]he more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous.") (quoting *McGrath*, 126 Ill. 2d at 86–87). Here, King alleges he was subject to discrimination and harassment from two supervisors who, the Court

reasonably infers, held power over his workplace conditions. *See, e.g.*, [27] ¶¶ 135, 143–44, 148–50, 152–55, 166, 169–70. And because the alleged discrimination was persistent and race-based, the discrimination went beyond the sort of "everyday job stresses" courts have found insufficient in other cases. *Richards*, 869 F.3d at 567.

As the Illinois Supreme Court has recognized, the "application of the 'outrageousness' requirement is necessarily difficult due to its vagueness." *McGrath*, 126 Ill.2d at 86. Thus, at this stage of the litigation and on the current record, the Court will not hold as a matter of law that defendants' allegedly racially discriminatory comments were the sort of "mere insults, indignities, … annoyances, petty oppressions, or [ ] trivialities" that fall short of IIED. *Richards*, 869 F.3d at 566. The Court thus finds that King's allegations are sufficient to state a claim for IIED under Illinois law. *See Aguilar v. Roland Corp. U.S.*, No. 20 C 6668, 2021 WL 2206154, at *3 (N.D. Ill. June 1, 2021) (finding allegations of workplace race discrimination sufficient to state an IIED claim even though plaintiff "may not ultimately establish" the outrageousness requirement).

The Court denies defendants' motion to dismiss King's claim for IIED in Count IV.

**B. Mattox**

**1. Counts I and VI – Discrimination**

In Counts I and VI, Mattox claims discrimination on account of his race and disability status. [27] ¶¶ 267, 316. To state a discrimination claim under Title VII, a plaintiff "must show some harm respecting an identifiable term or condition of

employment," but that harm does not need to be "significant." *Muldrow*, 601 U.S. at 354–55, 359. As discussed with respect to King's race discrimination claim, "Title VII claims are not subject to a heightened pleading standard," and "little information is required to put the employer on notice of these claims." *Carlson*, 758 F.3d at 827. "[A] complaint alleging [ ] discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her [protected characteristic]." *Luevano*, 722 F.3d at 1028 (quoting *Tamayo*, 526 F.3d at 1084).

Both Mattox's claims for race and disability discrimination meet this low standard. Mattox clearly experienced "harm respecting an identifiable term or condition of employment" when he was fired from Happy Hyundai. *See* [27] ¶¶ 251–53. And Mattox clearly alleges that Happy Hyundai took this action on account of his race and disability status. *Id.* ¶¶ 270, 318. Although this averment alone would have sufficed under *Luevano*, Mattox offers additional facts to support his discrimination claims. For example, to support his race discrimination claim, Mattox alleges that Dedic told him he "looked like a 'thug' while [he] was dressed in typical work attire" and that Ahmed would use "y'all" and "you people" to refer only to black employees. *Id.* ¶¶ 212, 216. As for his disability, Mattox alleges that Dedic mocked him for his eyesight problems—even though she knew they were caused by his MS—and announced his diagnosis to Happy Hyundai's entire staff "in a rage." *Id.* ¶¶ 195–96, 231. These allegations are more than enough to give Happy Hyundai "notice to enable

[it] to begin to investigate and prepare a defense." *Luevano*, 722 F.3d at 1028 (quoting *Tamayo*, 526 F.3d at 1085).

The Court denies Happy Hyundai's motion to dismiss Mattox's claim for race and disability discrimination in Counts I and VI.

### 2. Counts II and VII – Hostile Work Environment

In Counts II and VII, Mattox alleges he experienced a hostile work environment because of his race and disability. [27] ¶¶ 286, 329. As it did with respect to King, the Court likewise concludes that Mattox plausibly pleads a hostile work environment claim on those two bases. Mattox alleges that Dedic often publicly humiliated him and other black employees with racially coded language, that Dedic once told him he looked like a "thug" while dressed in work attire, and that Dedic made racially motivated comments about his sister. *Id.* ¶¶ 191, 194, 200, 212, 216, 242–44. And, as already discussed, all plaintiffs allege that Happy Hyundai engaged in a "racist scheme to keep black employees away from Defendant customers." *Id.* ¶¶ 56–58. As for his disability, Mattox alleges that he was written up for being late after a doctor's appointment and that Dedic announced his MS diagnosis to the entire staff "in a rage" *Id.* ¶¶ 226–28, 231–32. Mattox also alleges that Dedic made discriminatory comments about his eyesight and eye movements, despite knowing they were caused by his disability. *Id.* ¶¶ 248–49.

Happy Hyundai argues that Mattox's allegations "demonstrate that [Dedic] was not particularly fond of him but do not raise an inference of racial animus." [45] at 2. But to support a hostile work environment claim, Mattox "need not show that

the complained-of conduct was explicitly racial"—he need only show the conduct had a "racial character or purpose." *Paschall*, 28 F.4th at 814 (quoting *Yancick*, 653 F.3d at 544). Indeed, "forms of harassment that might seem neutral in terms of race … can contribute to a hostile work environment claim if other evidence supports a reasonable inference tying the harassment to the plaintiff's protected status." *Id.* (quoting *Cole v. Bd. of Trs. of N. Illinois Univ.*, 838 F.3d 888, 896 (7th Cir. 2016)). Here, Mattox alleges that Dedic's various comments were racially motivated, [27] ¶¶ 213, 217, 243, 247, and the sum of his allegations at least plausibly suggests that Dedic's comments had a racial character or purpose. Happy Hyundai does not offer any other reason why Mattox has not stated a hostile work environment claim related to his race. Therefore, at this stage in the litigation, the Court finds Mattox's allegations sufficient.

As for Mattox's hostile work environment claim related to his disability, Happy Hyundai argues that Mattox "fails to plausibly allege that he has a disability" because he does not "allege or suggest that it places a substantial limitation on a major life activity." *Id.* [31-1] at 11. To state a discrimination claim under the ADA, Mattox must first show he has a disability that substantially limits one of his major life activities. 42 U.S.C. § 12102(2)(A). The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities" of the individual, "a record of such impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Mattox alleges that he has MS, that he has "limitations" as a result of this condition, and, even more specifically, has "difficulty

20

seeing a result of his disability." [27] ¶¶ 186–87, 195. And, for purposes of defining who is disabled, the ADA defines a "major life activity" as, among other things, "seeing." 42 U.S.C. § 12102(2)(A). The Court therefore concludes that Mattox has adequately alleged his MS-related vision loss constitutes a disability under the ADA. By summary judgment, Mattox will need to offer facts showing that his vision is substantially limited, but for now his allegations are sufficient. *See Lantern Haus Co. v. Hoskins*, No. 21-CV-4490, 2023 WL 2745151, at *6 (N.D. Ill. Mar. 31, 2023) ("[A] plaintiff need not prove his case at the motion to dismiss stage.").

Defendants argue in the alternative that Mattox's alleged disability-related harassment was not sufficiently "severe or pervasive" to constitute a hostile work environment. *Robinson*, 894 F.3d at 828; *see also* [31-1] at 11. But Mattox plausibly pleads facts that a reasonable jury could find "severe or pervasive"—in particular, that his supervisor announced his MS diagnosis "in a rage" to the entire Happy Hyundai staff. [27] ¶ 231. At this early stage, the public disclosure of his diagnosis, combined with other eyesight-related comments, are enough to plausibly state a hostile work environment claim under the ADA.

The Court denies Happy Hyundai's motion to dismiss Mattox's claim for hostile work environment in Counts II and VII.

### 3. Counts III and VIII – Retaliation

In Counts III and VIII, Mattox brings a retaliation claim based on his race and disability. [27] ¶¶ 296, 341. "To plead a retaliation claim under Title VII, a plaintiff must allege that she engaged in statutorily protected activity and was subjected to

adverse employment action as a result of that activity." *Luevano*, 722 F.3d at 1029. "To engage in protected activity means to take 'some step in opposition to a form of discrimination that the statute prohibits.'" *Rosas v. Bd. of Educ. of City of Chicago*, 652 F. Supp. 3d 951, 960 (N.D. Ill. 2023) (quoting *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017)). "[T]he the standards for retaliation under the ADA and Title VII are the same." *Principe v. Vill. of Melrose Park*, No. 20 CV 1545, 2022 WL 488937, at *12 n.30 (N.D. Ill. Feb. 17, 2022).

Mattox says he engaged in two protected activities. First, he points to one instance in which he asked Dedic whether she was "really making a joke about this" after she "humiliated [him] in front of several managers and coworkers for having difficulty seeing as a result of his disability." [27] ¶¶ 195–96. But Mattox does not cite any authority for the proposition that a single comment pushing back on a supervisor's discriminatory statement can constitute a protected activity for a retaliation claim, and the Court will not make his arguments for him. *See Tyler*, 70 F.3d at 466.

Second, Mattox alleges that he engaged in protected activity when he "held a meeting with [Dedic] and the assistant manager informing them that [Dedic's] behavior was inappropriate and that he did not feel respected as a salesman." [27] ¶ 208. An employee's complaint to an employer about unlawful discrimination constitutes protected activity. *See Orton-Bell v. Indiana*, 759 F.3d 768, 776 (7th Cir. 2014). Happy Hyundai contends that this cannot constitute a protected activity because Mattox "does not allege that he complained to management about either

racial or disability discrimination." [45] at 3. True, "complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006); *c.f. Carlson*, 758 F.3d at 828 (stating that "[t]he protected activity must be specifically identified") (citing *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 782 (7th Cir. 2007)). And here, Mattox's allegations do not explicitly say that he rooted his complaint to management in his race or disability status; he only alleges that he told Dedic and the assistant manager that Dedic's behavior was "inappropriate" and that he "did not feel respected as a salesman." [27] ¶ 208. At the same time, Mattox alleges that "*in response*" to the "humiliation … motivated by animus" that he experienced, Mattox had the meeting with Dedic and the assistant manager. *Id.* ¶¶ 207–08 (emphasis added). Taking these allegations as true and viewing them in the light most favorable to Mattox, the Court reasonably infers that Mattox did not just use the meeting as an opportunity to tell Dedic *that* her behavior was inappropriate, but that he also told Dedic *why* he thought her behavior was inappropriate (*i.e.*, that it was rooted in his race and disability status). After all, Mattox alleges that he had the meeting in response to the discriminatory conduct he purports to have experienced.

And Mattox's other allegations leave no doubt as to the underlying behavior Mattox believed was unlawful. For example, Mattox pleads one instance in which Dedic asked "what are you, blind?" in response to Mattox's difficulty seeing. *Id.* ¶¶ 195–96. Other allegations recount that Dedic would "often insult [his]

23

intelligence" and that she often called him "stupid" and "slow." *Id.* ¶ 190–91. These allegations give Happy Hyundai plenty of notice as to the subject of Mattox's retaliation claim. *Compare Tamayo*, 526 F.3d 1085 (plaintiff stated a retaliation claim where "defendants were put on notice about the nature of the claims"), *with Concentra*, 496 F.3d at 782 (plaintiff did not state a retaliation claim where complaint only alleged "retaliation for some unspecified act" and did not allow defendant to "anticipate the sort of evidence that may be brought to bear").

Of course, by the summary judgment stage, Mattox will need to deduce evidence establishing that he did in fact complain—in more specific terms—of discrimination related to his protected characteristics. But for now, his allegations suffice to state a claim for relief. The Court therefore denies Happy Hyundai's motion to dismiss Mattox's retaliation claims in Counts III and VIII.

### 4. Count IV – Intentional Infliction of Emotional Distress

Finally, in Count IV, Mattox brings an IIED claim under Illinois law. [27] ¶ 311. Defendants again argue that the IHRA preempts Mattox's IIED claim. [45] at 4–5. But, as before, defendants do not explain how Mattox's IIED claim relies on legal duties created by the IHRA. *See Richards*, 869 F.3d at 564. They only argue that his IIED claim is "premised on the same facts as his harassment and discrimination claims," [45] at 5, but *Richards* made clear that the "preemption test 'rest[s] on an examination of legal duties, not on the factual' overlap between the claims." *Id.* (quoting *Naeem*, 444 F.3d at 603 n.4).

24

In the alternative, defendants suggest that Mattox's IIED claim fails because their behavior did not coerce Mattox "into doing something he would not otherwise do." [45] at 6–7. Although some courts have considered this factor relevant to the eventual IIED determination, *see, e.g.*, *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 154 (Ill. App. Ct. 1st Dist. 1999), defendants have not offered any authority to support that its absence should be determinative at this early stage, especially where it does not appear as an element of an IIED claim, *see McGrath*, 126 Ill. 2d at 86. The Court finds the sum of the allegations already discussed sufficient at this stage to state an IIED claim, especially where the alleged conduct came from Mattox's supervisors and went beyond the sort of "everyday job stresses" that do not ordinarily give rise to IIED liability. *Richards*, 869 F.3d at 567; *see also Honaker*, 256 F.3d at 491 (IIED claim more likely to succeed if defendant exerts control over plaintiff). At this point in the litigation, the Court declines to hold as a matter of law that such behavior is not sufficiently extreme and outrageous to state a claim for IIED. *See Aguilar*, 2021 WL 2206154, at *3.

The Court denies defendants' motion to dismiss Mattox's claim for IIED in Count IV.

CONCLUSION

For the foregoing reasons, the Court denies defendants' motions to dismiss. [31]; [32]. Defendants have until 7/29/25 to answer plaintiffs' complaint. *See* Fed. R. Civ. P. 12(a)(4)(A). Consistent with the Court's most recent minute entry [50], the parties are directed to continue engaging in fact discovery, to discuss the possibility of settlement, and to submit their next status report by 9/26/25.

Georgia N. Alexakis
United States District Judge

Date: 7/15/25